**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br>378 Main Street,<br>Tucson, AZ 85701<br><br>*Plaintiff,*<br><br>v.<br><br>**HOWARD LUTNICK**, in his official capacity as Secretary of the U.S. Department of Commerce,<br>1401 Constitution Ave., N.W.<br>Washington, D.C. 20230<br><br>**EUGENIO PIÑEIRO SOLER,** in his official capacity as Assistant Administrator<br>National Marine Fisheries Service<br>National Oceanographic and Atmospheric Administration<br>1315 East-West Highway,<br>Silver Spring, MD 20910<br><br>**NATIONAL MARINE FISHERIES SERVICE,**<br>National Oceanographic and Atmospheric Administration,<br>1315 East-West Highway<br>Silver Spring, MD 20910<br><br>*Defendants.* | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No:  __1:26-cv-2397__ |

**INTRODUCTION**

1.      The Center for Biological Diversity ("Center"), an environmental organization that works to protect imperiled wildlife species and their habitats, challenges the National Marine Fisheries Service's ("Service") failure to comply with the nondiscretionary deadlines set forth in the Endangered Species Act, 16 U.S.C. §§ 1531-1544 (Act). Specifically, the Service failed to designate critical habitat for the queen conch (*Aliger gigas*) concurrently with its decision to list

the queen conch as threatened on February 14, 2024, finding that critical habitat was not then determinable. The Service also failed to designate critical habitat one year after the date that it found critical habitat was not then determinable.

2.     One look at the queen conch's majestic shell, with its brilliantly colored interior, will leave no doubt as to how the species got its name. This large marine snail can be found off the coasts of Florida, Puerto Rico, and the U.S. Virgin Islands; however, overharvesting, pollution, habitat degradation, and climate change have placed the species in danger of extinction in the foreseeable future. Accordingly, the Service has protected the queen conch as threatened under the Act.

3.     Having published a final rule listing of the queen conch as threatened on February 14, 2024, and concurrently concluding that critical habitat was not then determinable, the Act required the Service to designate critical habitat by February 14, 2025. Yet the Service has not even proposed—let alone finalized—a critical habitat designation for the queen conch.

4.     To ensure that the conch receives the lifesaving habitat protections it needs and is entitled to under the Act, the Center brings this action for declaratory and injunctive relief against Howard Lutnick, in his official capacity as Secretary of Commerce; Eugenio Piñeiro Soler, in his official capacity as Assistant Administrator of the National Marine Fisheries Service; and the United States National Marine Fisheries Service to affirm the Defendants are violating the Endangered Species Act for failing to designate critical habitat for the queen conch in accordance with mandatory statutory deadlines. The Center respectfully request that this Court compel the Service to issue a rule designating critical habitat that is imperative for the queen conch's survival by a date certain.

## JURISDICTION AND VENUE

5.    The Center brings this claim under the Endangered Species Act, 16 U.S.C.

§§ 1533 and 1540(g).

6.    This Court has jurisdiction over this action under 16 U.S.C. § 1540(c) & (g)

(actions arising under the citizen suit provision of the Endangered Species Act), 28 U.S.C. §

1331 (federal question jurisdiction), and 28 U.S.C. § 1346 (United States as a Defendant).

7.    The Court has authority to grant the requested relief under 28 U.S.C. § 2201

(declaratory relief), 28 U.S.C. § 2202 (injunctive relief), and 16 U.S.C. § 1540(g) (ESA).

8.    Venue is proper in the United States District Court for The District of Columbia

according to 16 U.S.C. § 1540(g)(3)(A) because Defendant Lutnick is located in Washington,

DC, and this is the district in which the violation occurred.

## PARTIES

9.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit

501(c)(3) organization incorporated in the State of California and headquartered in Tucson,

Arizona, with offices and staff throughout the United States. The Center works through science,

law, and policy to secure a future for all species, great or small, hovering on the brink of

extinction. The Center's Florida and Caribbean Program, based in Saint Petersburg, Florida,

works to protect the most vulnerable species and landscapes across the region, including the

queen conch.

10.    The Center has more than 101,600 active members throughout the United States

and the world.

11.    The Center and its members have a deep and long-standing interest in the

preservation and recovery of imperiled species, including the queen conch.

3

12.     For example, Center member Jordan Mannix-Lachner is a year-round resident of Key West, Florida. Jordan snorkels at various locations throughout the Florida Keys, including at Snipes Key, Marvin Key, and the Mud Keys, approximately twice a month from May through October each year. She looks forward to seeing queen conch while she recreates and typically sees a conch one to three times a year. She recalls queen conch being more abundant and seeing queen conch more frequently when snorkeling in the Keys as a child. Jordan is also the Executive Director of Keys Last Stand, a nonprofit located in Key West, and she regularly discusses the queen conch and its importance as a cultural symbol of the Keys while working in a professional capacity within the community.

13.     Defendant HOWARD LUTNICK is Secretary of the U.S. Department of Commerce and has the ultimate responsibility to administer and implement the provisions of the Act for marine species like the queen conch. He is sued in his official capacity.

14.     Defendant EUGENIO PIÑEIRO SOLER is the Assistant Administrator of the National Marine Fisheries Service, the agency within the Department of the Commerce charged with implementing the Act for the marine species at issue in this suit. Defendant Piñero Soler is charged with ensuring that agency actions and decisions comply with the Act and is sued in his official capacity.

15.     Defendant NATIONAL MARINE FISHERIES SERVICE is a federal agency within the Department of Commerce responsible for implementing the provisions of the Act for marine species, including designating critical habitat for endangered and threatened species.

## STATUTORY BACKGROUND

16.     The Endangered Species Act "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*,

4

437 U.S. 153, 180 (1978). "Congress intended endangered species be afforded the highest of priorities." *Id.* at 174. Accordingly, the Act's purpose is to "provide a program for the conservation of . . . endangered species and threatened species" and "to provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved." 16 U.S.C. § 1531(b).

17.     To that end, the Act requires the Service to protect imperiled species by listing them as "endangered" or "threatened." *Id.* § 1533(a)(1). A species is endangered if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is threatened if it is "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

18.     Once a species is listed, it receives a host of important protections designed to prevent its extinction and aid its recovery, including one of the most crucial protections— safeguards for its "critical habitat." *Id.* § 1531(b).

19.     Critical habitat includes specific areas occupied by the threatened or endangered species with "physical or biological features . . . essential to the conservation of the species and . . . which may require special management considerations or protection," as well as specific areas unoccupied by the species that "are essential for the conservation of the species." *Id.* § 1532(5)(A). "Conservation" of a species means "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the Act] are no longer necessary." *Id.* § 1532(3). Accordingly, critical habitat includes areas that require proper management to ensure a listed species will not simply survive but also recover.

20. To ensure species at risk of extinction receive these essential habitat protections in a timely manner, Congress prioritized designating critical habitat. *Id.* § 1533(a)(3), (b)(6); *see also id.* § 1531(b) (statutory directive to "provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved"). The Service is required, "to the maximum extent prudent and determinable," designate critical habitat for a species "concurrently with making a determination that a species is an endangered species or threatened species," *id.* § 1533(a)(3)(A), (b)(6)(C).

21. If critical habitat is "not . . . determinable" at this mandatory decision point, the Service may extend the deadline to designate critical habitat by "no more than one additional year," at which point it must publish a final regulation "based on such data as may be available at the time." *Id.* § 1533(b)(6)(C)(ii).

22. Designation of critical habitat is not determinable when "[d]ata sufficient to perform required analyses are lacking; or . . . [t]he biological needs of the species are not sufficiently well known to identify any area that meets the definition of 'critical habitat.'" 50 C.F.R. § 424.12(a)(2).

23. The Service must make critical habitat designations based on "the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area of critical habitat." 16 U.S.C. § 1533(b)(2).

24. If the Service finds it is not prudent to designate critical habitat or that critical habitat is not determinable, it must "state the reasons for not designating critical habitat in the publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a).

6

25.     The Act does not safeguard a species' critical habitat until the Service designates it. And for species, like the conch, whose habitat is threatened by human activities, critical habitat protections are vital for their survival and recovery. Accordingly, it is essential that the Service meticulously follow the Act's procedures and deadlines to ensure it designates critical habitat in a timely manner.

### STATEMENT OF FACTS

26.     The queen conch, pictured below, is an herbivorous marine snail known for its large, spiral-shaped shell with a striking pink interior. The queen conch moves by hopping and retracts its soft body into its shell to avoid predators. The conch's vision is more advanced than other mollusk species, with highly developed eyes fixed atop two independently mobile stalks that will peek out from within its shell.



*Photo: Jennifer Doerr, NOAA Southeast Fisheries Science Center, Galveston, TX, USA-*
*Queen Conch (Strombus gigas)*

27.     The queen conch is a cultural symbol throughout the Florida Keys and Caribbean. In the United States, queen conchs are found off the coasts of Puerto Rico, the U.S. Virgin

Islands, and Florida, where they most commonly inhabit shallow waters up to 30 meters deep but have been found as deep as 60 meters.

28. Successful queen conch reproduction is density-dependent and susceptible to the Allee effect, which means a certain density of conchs must be present in one place for the population to successfully reproduce. It is generally accepted that conch density must meet the threshold of 100 to 204 animals per hectare to successfully reproduce depending on the location.

29. Overutilization of queen conch is the most significant threat to the species. Harvest occurs primarily through commercial queen conch fisheries; recreational fishing; and illegal, unreported, and unregulated fishing, all of which have contributed to significant decline of the species throughout its range.

30. Florida state law bans harvesting of queen conch. In Puerto Rico and the U.S. Virgin Islands' territorial waters, however, queen conch may be harvested subject to seasonal and area restrictions. Fishing is also permitted in certain federal waters off the coast of St. Croix, VI.

31. The negative effects inflicted by overharvest are compounded by the queen conch's susceptibility to pollutants and sedimentation within its habitat. Toxins found in queen conch habitats include industrial pollutants like heavy metals and organotins, which are associated with negative impacts to queen conch growth, reproduction, and anatomy.

32. Where climate change impacts make storm surge, high tide flooding, or runoff more severe, sedimentation in nearby waterways can necessitate more frequent maintenance dredging at ports, channels, or marinas. Scientists have documented negative impacts to queen conch reproduction where the ocean floor is disturbed by dredging and construction projects, resuspending pollutants and sediments in queen conch habitat.

33.    For example, ongoing and planned dredging in Fort Lauderdale, Florida, associated with the Sand Bypass Project and plans to expand Port Everglades are likely to negatively impact occupied queen conch habitat.

34.    Hurricanes are also associated with significant decline in queen conch populations. Hurricanes can displace sediment, causing queen conch mortality by burying live animals and queen conch habitat. Florida queen conch populations suffered significant decline following Hurricanes Ian and Irma.

35.    On February 27, 2012, the Service received a petition to list the queen conch as threatened or endangered throughout all or a significant portion of its range under the Act. Following a species status review, in 2014, the Service published its determination that listing the queen conch was not warranted.

36.    The petitioners challenged the Service's not-warranted determination in federal court, and the court vacated the determination and remanded it to the Service for a new decision. *Friends of Animals v. Ross*, 396 F. Supp. 3d 1 (D.D.C. 2019)

37.    On September 8, 2022, the Service published a proposed rule listing the queen conch as threatened under the Act and soliciting comments for information regarding designation of critical habitat.

38.    On February 14, 2024, the Service finalized listing the queen conch as threatened but concluded that critical habitat was not then determinable because of insufficient data to complete the required analysis. Listing the Queen Conch as Threatened Under the Endangered Species Act, 89 Fed. Reg. 11208 (Feb. 14, 2024).

39.    The Service was required to propose critical habitat either concurrently with its decision to list the queen conch as threatened or within one year of its final decision, by February

9

14, 2025. Yet more than two years after listing the species, following a pattern of missed statutory deadlines, the Service has failed to make this mandatory finding, in violation of the Act. 16 U.S.C. §§ 1533(b)(6)(C).

40. The Center provided notice of its intent to sue Defendants by letter dated September 17, 2025, and received confirmation of receipt from Defendant Piñeiro Soler and NOAA Fisheries on September 24, 2025, and from Defendant Lutnick on September 29, 2025. As of the date of this Complaint, Defendants have not remedied the legal violations outlined in the notice and herein.

## THE CENTER'S CLAIM FOR RELIEF

<u>Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(6)(C)(ii)</u>
<u>Failure to Designate Critical Habitat for the Queen Conch</u>

41. The Center re-alleges and incorporates by reference all the allegations set forth in this Complaint as though fully set forth below.

42. To the maximum extent prudent and determinable, the Endangered Species Act required Defendants to designate critical habitat for the queen conch concurrently with the decision to list the species as threatened on February 14, 2024, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C). However, because Defendants concluded that critical habitat for the queen conch was not determinable at the time of listing, the Act afforded the Service one additional year, by February 14, 2025, to publish a final regulation, "based on such data as may be available at that time, designating, to the maximum extent prudent, [critical habitat] habitat." *Id*. § 1533(b)(6)(C)(ii).

43. At the time of listing the queen conch, Defendants stated in the final rule that any critical habitat designation would be proposed in a separate, future rule. Yet, as of the date of this Complaint, Defendants have not proposed or finalized critical habitat for the queen conch.

44.     Defendants have violated the Endangered Species Act, 16 U.S.C. § 1533(b)(6)(C)(ii), as well as its implementing regulations, by failing to designate critical habitat for the queen conch.

45.     The Center and its members are injured by the Service's failure to designate critical habitat, which violates Congress's mandate in the Act that the Service designate critical habitat concurrently with listing a species or no more than one year after finalizing listing of a species as threatened under the Act. A Court Order requiring the Service to make a critical habitat designation by a date certain would remedy the Center's and its members' injuries.

## PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that this Court enter a Judgment for the Center providing the following relief:

(A)   Declare that the Defendants violated the Endangered Species Act by failing to timely designate critical habitat for the queen conch;

(B)   Order the Defendants to designate, by date certain, final critical habitat for the queen conch under the Endangered Species Act, 16 U.S.C. § 1522(a)(3)(A);

(C)   Grant the Center its reasonable attorneys' fees and costs in this action, as provided by the Endangered Species Act, 16 U.S.C. § 1540(g)(4); and

(D)   Provide such other relief as the Court deems just and proper.

DATED: July 8, 2026

Respectfully submitted,

/s/ *Elise Pautler Bennett*
D.C. Bar No. FL0018

11

Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 755-6950
Fax: (520) 623-9797
Email: ebennett@biologicaldiversity.org

 /s/ *Kirsten A. Muir*
Kirsten Alex Muir
FL Bar No. 1071715*
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (352) 432-0940 x 472
Fax: (520) 623-9797
Email: amuir@biologicaldiversity.org
**Pro Hac Vice* application pending


*Attorneys for Plaintiff*

12